```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF WEST VIRGINIA
                            AT CHARLESTON


STEVEN LEE ADKINS, JR.,

        Plaintiff,

v.                                   Civil Action No. 2:18-cv-00342

WARDEN DAVID BALLARD,
CAPTAIN TONEY, C.O. DEMPSEY,
JOHN DOE #1, and JOHN DOE #2,

        Defendants.
```

## MEMORANDUM OPINION AND ORDER

Pending is defendants' motion for summary judgment, filed March 8, 2019.

### I. Background

In his complaint, plaintiff brings claims of (1) excessive use of force, (2) supervisory liability, and (3) emotional and mental distress.  See Compl.  These claims relate to a July 25, 2017 incident in which plaintiff refused to leave his cage in the recreation yard of Mount Olive Correctional Complex ("MOCC"), resulting in the correctional officers ("COs") removing him by force.

This action was previously referred to the Honorable Dwane L. Tinsley, United States Magistrate Judge, for submission

to the court of his Proposed Findings and Recommendation ("PF&R") for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). On January 7, 2020, the magistrate judge entered the PF&R recommending that the court grant defendants' motion for summary judgment and dismiss this case from the court's docket. See PF&R 11. Plaintiff filed timely objections on January 21, 2020. Defendants did not file objections or a response.

## II. Legal Standard

Upon an objection, the court reviews a PF&R de novo. Specifically, "[t]he Federal Magistrates Act requires a district court to 'make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made.'" Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (first alteration added) (quoting 28 U.S.C. § 636(b)(1)).

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d

570, 576 (4th Cir. 2010).  A "genuine" dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-moving party.  Anderson, 477 U.S. at 248.

Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  A party is entitled to summary judgment if the record, as a whole, could not lead a rational trier of fact to find for the non-moving party.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).  Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.

### III. Discussion

Plaintiff lists several objections.  Among them, he asserts that "[t]here are genuine issues of disputed material facts such as, them choking me _after_ I was subdued/strained and had said 3 times 'I am not resisting' in a clear and calm voice."  See Obj. 1 (emphasis in original).  Plaintiff also objects that he should have been allowed to see a mental health

professional and that he intends to show at trial that the MOCC staff illegally refused to see him and provide medical attention. Id. at 1-2.

These objections largely repeat plaintiff's arguments raised in response to defendants' motion for summary judgment that:

> All arguments of justification of use of force administered against me, such as excessive O.C. [Oleoresin Capsicum spray]; and choking me unprofessionally and dangerously after I was subdued and not resisting and stated so clearly verbally multiple times all of which can be verified by footage, isn't true. All use of force was avoidable if prison officials would've let me speak to mental health as policy directives suggest before an extraction and as I requested to CO's and Bess and camera footage/audio can verify.

Pl.'s Resp. Opp. Mot. Summ. J. 4.

The magistrate judge concluded that defendants' conduct did not constitute an "unnecessary and wanton infliction of pain" under the Eighth Amendment of the United States Constitution. See PF&R 10. As explained by the magistrate judge, an excessive force claim "necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." Id. (quoting Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996)). Defendants' motion

for summary judgment and the PF&R focused on the subjective component.  See Defs.' Mem. Supp. Mot. Summ. J.; PF&R.

As to the subjective component, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley [v. Albers, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 6–7 (1992)).  Courts use the following four factors to assess a defendant's subjective intent:

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response."

Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008) (quoting Whitley, 475 U.S. at 321); see also Brooks v. Johnson, 924 F.3d 104, 116 (4th Cir. 2019).

Analyzing these factors, the magistrate judge concluded that the "undisputed" audio/video footage furnished by defendants demonstrates that the use of force was made in a good faith effort to restore order in the recreation yard containment unit.  See PF&R 7–10.  In particular, the magistrate judge found

5

that plaintiff has not offered any admissible evidence to challenge the incident reports and audio/video provided by defendants.  See id. at 1.  Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the magistrate judge's September 6, 2018 scheduling order notified plaintiff of his right and obligation to respond to any motion for summary judgment filed by defendants, "submitting affidavits or statements subject to the penalties of perjury, exhibits, or other legal or factual material supporting his position in the case."  See Sept. 6, 2018 Order.

Plaintiff did so when he filed his complaint on February 22, 2018.  He signed and dated his complaint "under penalty of perjury that the foregoing is true and correct."  See Compl. at 10.  "[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." Griffin, 952 F.2d at 823 (emphasis in original); see also Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

As noted in the 2010 Amendment to the Advisory Committee Notes on Federal Rule of Civil Procedure 56(c)(4), "28 U.S.C. § 1746 allows a written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury to substitute for an affidavit." Fed. R. Civ. P. 56 advisory committee's note. For unsworn declarations to satisfy the requirements of 28 U.S.C. § 1746, they must be signed and dated as true and correct under penalty of perjury, "in substantially . . . the form" of the model declaration provided in the statute. 28 U.S.C. § 1746; see also Roberson v. Hayti Police Dep't, 241 F.3d 992, 995 (8th Cir. 2001); Schroeder v. McDonald, 55 F.3d 454, 460 n.10 (9th Cir. 1995). The model declaration shows that a declarant must "declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct." 28 U.S.C. § 1746(2).

Plaintiff's complaint, signed under penalty of perjury to be true and correct, complies with these requirements.[1] Insofar as the verified complaint describes allegedly unconstitutional Oleoresin Capsicum spray and choking, it "was

---

[1] On January 2, 2020, plaintiff also filed a self-styled declaration providing, "With declaration under punishment of perjury, I state my words here are true and everything I've sent to the courts in writing prior to this date are true." See Declaration of Steven Adkins, Jr. However, the declaration does not specify any facts itself. In addition, none of plaintiff's other submissions satisfy 28 U.S.C. § 1746.

based upon his own personal knowledge and set forth specific facts admissible in evidence." Griffin, 952 F.2d at 823.

Plaintiff thus offered evidence to refute defendants' materials notwithstanding the magistrate judge's findings otherwise. In his verified complaint, plaintiff alleges that he explained to a "unit team manager" on the recreation yard that he had "been trying for weeks to speak with" mental health personnel to no avail. Compl. ¶ 1. Plaintiff told the CO that he "desperately needed to talk to mental health" and would not leave his cage until they reached out to mental health personnel. Id. "Soon after," a group of COs dressed in riot gear entered the recreation yard asking plaintiff "to leave the cage and cuff up," but plaintiff continued to refuse until they granted his request. Compl. ¶ 3. Following a "brief discussion with Capt. Toney regarding" plaintiff's request, the COs proceeded to spray plaintiff several times in "3 to 5 second burst[s]," blinding plaintiff as he also struggled to breath. Id. ¶ 4. The COs then opened the gate to his cage and tackled him to the ground. Id. ¶ 5. The complaint continues, "Once I was completely restrained on the ground they were still assaulting me, one of them reached around and grabbed my throat with their hands and started choking me for no reason. I was already subdued, restrained and not resisting." Id. ¶ 6.

In the audio/video furnished by defendants, Parts 1 through 3 show plaintiff refusing to comply with requests to leave the recreation yard cage for over an hour. See PF&R 9; Suppl. Mem. Supp. Defs.' Mot. Summ. J., Dec. 11, 2019 DVD Exhibits ("DVD Exhibits"). In Part 4, the audio/video shows plaintiff "assuming a combative stance with a toboggan covering his head and displaying obscene gestures to the officers" as he continued to reject their commands. See PF&R 9; DVD Exhibits. It depicts plaintiff maintaining a combative posture even after the COs used the Oleoresin Capsicum spray. See PF&R 9-10; DVD Exhibits. The COs tackled plaintiff only after plaintiff charged toward them when they entered the cage to finally subdue him. See PF&R 9-10; DVD Exhibits.

As the audio/video shows, plaintiff states "I'm not resisting" as the guards restrain him on the ground, approximately 20 seconds after he first charged toward them in the cage. See DVD Exhibits. He repeats this phrase approximately four times over the next 20 seconds as the guards continue to apply the mechanical restraints. Id. The audio/video does not show whether the COs choked plaintiff when he was on the ground. Id. The incident reports furnished by defendants indicate that one of the COs, Johnny Wilson, was responsible for "secur[ing] his head and neck area while

9

mechanical restraints were applied to both his wrist and ankles." See Defs.' Mot. Summ. J., Ex. C at 10, 12.  In the less than a minute and a half it took to subdue and restrain plaintiff in the video, his body is largely obscured by the team of COs.  See DVD Exhibits.

The audio/video shows that application of force was necessary as plaintiff was noncooperative and hostile even after the Oleoresin Capsicum spray was administered.  Yet, the need to maintain order or restore discipline no longer exists when "the victim is restrained, compliant, and incapable of resisting or protecting himself, and otherwise presents no physical threat in any way."  Thompson v. Commonwealth of Virginia, 878 F.3d 89, 105 (4th Cir. 2017).  While defendants' motion and the PF&R focus on the importance of using the Oleoresin Capsicum spray to get plaintiff out of his cage, plaintiff contends that he was choked for no reason after he "was already subdued, restrained and not resisting."  Compl. ¶ 6.

Regarding the third Whitley factor, plaintiff was noncompliant and presented a physical threat when the COs entered the cage.  Plaintiff aggressively rushed towards the officers when they first tried to subdue him, not to mention his defiance during the hour-long confrontation that led to the use of force.  See PF&R 9-10; DVD Exhibits.  "Officials are entitled

to use appropriate force to quell prison disturbances." Benjamin, 77 F.3d at 761. In these circumstances, COs "must balance the need 'to maintain or restore discipline' through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively." Hudson, 503 U.S. at 6 (1992). The court "must accord due deference to an officer's efforts to restrain a detainee when faced with a dynamic and potentially violent situation; otherwise, 'we would give encouragement to insubordination in an environment which is already volatile enough.'" Scarbro v. New Hanover Cty., 374 F. App'x 366, 370 (4th Cir. 2010) (quoting Grayson v. Peed, 195 F.3d 692, 697 (4th Cir.1999)).

Nonetheless, defendants do not explain how choking plaintiff after he was tackled and restrained would satisfy the second and fourth Whitley factors. To be sure, "use of mace can be constitutionally used in small quantities to . . . control a 'recalcitrant inmate.'" See Benjamin, 77 F.3d at 763; PF&R. The limited use of Oleoresin Capsicum spray to gain compliance from plaintiff while he remained hostile was supported by the audio/video. The incident reports and audio/video also show that restraining plaintiff's head and neck was necessary to subdue him and apply the mechanical restraints. See Defs.' Mot. Summ. J., Ex. C at 10, 12; DVD Exhibits. Yet, there remains a

genuine dispute of material fact. The verified complaint asserts that plaintiff was choked after he "was already subdued, restrained and not resisting" while defendants deny that any COs choked plaintiff during the incident. See Compl. ¶ 6; Answer ¶ 11. Plaintiff's portrayal in the verified complaint is not "blatantly contradicted" by the audio/video. See Scott, 550 U.S. at 380. The video does not clearly show what happened immediately after plaintiff was tackled when plaintiff's body was obscured by a team of COs. See DVD Exhibits.

The video depicts COs placing their arms around plaintiff's head and neck area to subdue him. See DVD Exhibits. Later in the video when the COs walk him away, his neck does show signs of redness and possible bruising. Id. Defendants do not provide any deposition testimony, affidavit, medical reports, or further evidence to contradict plaintiff's contention that he was choked after he was "subdued, restrained and not resisting." Compl. ¶ 6. Although defendants deny the choking allegation in their answer, they do not address it in their motion and supporting memoranda. Taken in the light most favorable to plaintiff, choking him when he was already restrained and compliant may amount to malicious and sadistic use of force.

In addition, the court cannot say as a matter of law that the use of force was "nontrivial." See Wilkins v. Gaddy, 559 U.S. 34, 39 (2010). "An inmate who complains of a "'push or shove'" that causes no discernible injury almost certainly fails to state a valid excessive force claim." Id. at 38 (quoting Hudson, 503 U.S. at 9). That said, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Id. "[A] lack of injury is not dispositive, so long as there is sufficient evidence of maliciously-applied force." Mann v. Failey, 578 F. App'x 267, 272 (4th Cir. 2014) (citing Wilkins, 559 U.S. at 38). Plaintiff does not describe a mere push or shove. As a result of the alleged choking, plaintiff states that his "throat was bruised, and sore for 3-4 weeks" and that he "could not swallow or eat, lost weight, and muscle/neck soreness" in addition to suffering mental distress. Compl. ¶¶ 11–12. Consequently, defendants are not entitled to judgment as a matter of law on plaintiff's excessive force claim.

Finally, plaintiff's objection regarding his supervisory liability claim against Warden David Ballard based on plaintiff's unsupported assertion of MOCC's long history of indifference is without merit. The magistrate judge found that

inasmuch as plaintiff has not established an Eighth Amendment violation against any of the defendants, plaintiff has not raised a genuine issue of material fact that Ballard acted with deliberate indifference or tacit authorization of the alleged constitutional abuses. See PF&R (citing Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994)). Even though plaintiff may be able to sustain his excessive force claim, he provides no evidence to support his allegation that Ballard "condoned a pattern and practice of use of excessive force and has been found liable in the past as supervisory liability in another use of force case." Compl. at 5. Plaintiff does not provide any details regarding the alleged other case against Ballard.

Inasmuch as this part of the verified complaint merely contains conclusory allegations, it will not satisfy the requirements of Rule 56(c)(4). See Fed. R. Civ. P. 56(c)(4); Walker v. Tyler Cty. Comm'n, 11 F. App'x 270, 274 (4th Cir. 2001); see also Lantec, Inc. v. Novell, Inc., 306 F.3d 1003, 1018–19 (10th Cir. 2002) (affirming that "the relevant paragraphs of the complaint could not be treated as an affidavit because they did not relate to facts [based on] personal knowledge"); Sheinkopf v. Stone, 927 F.2d 1259, 1262–63 (1st Cir. 1991) (disregarding conclusory allegations in verified complaint while considering "factual averments of the complaint,

to the extent demonstrated to come within [plaintiff's] personal knowledge"). Thus, defendant Ballard is entitled to judgment as a matter of law on plaintiff's supervisory liability claim.

IV. Conclusion

Therefore, the PF&R of United States Magistrate Judge Tinsley is hereby adopted in part and rejected in part. It is ORDERED that defendants' motion for summary judgment be, and it hereby is, granted with respect to plaintiff's claim of supervisory liability, and denied insofar as there is a genuine dispute of material fact regarding the alleged choking. It is further ORDERED that defendant Ballard be dismissed from this action.

The Clerk is directed to forward copies of this memorandum opinion and order to plaintiff, all counsel of record, and the United States Magistrate Judge.

ENTER: February 25, 2020

John T. Copenhaver, Jr.
Senior United States District Judge